Edgab P. Hazleton, S.
When decedent died intestate, two women appeared in the estate as his widow, one being Myra Duck, the petitioner herein. Her status being somewhat dubious, her attorney, the respondent herein, settled her claim for 22%% of the estate, after payment of all debts, administration expenses and taxes.
The petitioner now wishes to discharge her attorney and have his compensation fixed. When petitioner retained respondent, the retainer agreement provided: “ I do hereby agree to pay my said attorneys for their services in this matter 5% of the gross estate together with all necessary costs and disbursements.” The estate amounts to $428,354.74, according to the valuations submitted in the various tax proceedings affecting this estate. The respondent wants 5% of this sum, while the petitioner wishes to pay him only the fair and reasonable value of his services up to October 9, 1957, which I presume is the day she fixes when the attorney was advised he was no longer in her service.
There is no ambiguity as to the intentions of the parties when the retainer was signed so as to bring it within the scope of *741 Demov & Morris v. Fontheim (4 A D 2d 472). The language is clear and easy of understanding. The petitioner’s moving papers do not claim that she does not understand its terms. This court recalls that at the time the retainer was signed, three people were contesting for control, the petitioner, Jennie Johnson, sister of decedent and one Dorothy Campisi, an alleged common-law wife. Dorothy Campisi was pressing her claim in the State of Florida, where common-law marriages are still recognized. Her claim was settled for 17 % of the estate. There is no doubt that petitioner knew the circumstances of the case when she signed her retainer. She was anticipating a windfall, having married decedent 38 years before his death, when she was but 15 years old, leaving him within two weeks after the marriage. She believed that she had obtained a legal divorce thereafter and was lawfully married to her present husband. She had never so much as dreamed she was the widow of decedent until she was located as a possible party by an investigation conducted at the direction of this court. It then turned out that her divorce proceeding against decedent had never been concluded so that her marriage to her present husband was invalid. It was agreed accordingly that petitioner was the lawful surviving spouse of decedent, strange as it all may sound.
The respondent has rendered excellent service to petitioner. He has in fact completed his work since petitioner’s percentage of the estate has been fixed and payment on account has even been secured for her. Nothing remains for him to do except to see to it that his client is paid the balance of her share. Therefore, whoever is substituted as attorney in place of respondent cannot get her one dollar more than the 22%% already stipulated as her share.
Granting that a client can change her attorney at will, she cannot turn out a faithful and competent attorney on her own terms, especially where, as here, the request for substitution appears to be based on no more than a whim. If the attorney’s compensation were to be fixed at 5% of the gross estate, the resultant fee would be most modest, in view of the results achieved by him for his client, who had very little when the retainer was signed, and who is now well on the way to becoming well off. I understand her trouble to be that she wants more money and is not getting it fast enough. However, this proceeding, insofar as the attorney’s fee is concerned, is in quantum meruit. Also, while “ 5% of the gross estate ” would yield a fair result in this case, the court hesitates to enforce an agreement based upon a percentage of the gross estate in a type of *742 case where the percentage of the estate recovered for the client could make such a fee a disproportionately small or large one.
The court finds that the reasonable value of services rendered by respondent is one third of his client’s share in this estate. Proceed accordingly.